```
                                          ┌─────────────────────────────┐
                                          │ USDC SDNY                   │
                                          │ DOCUMENT          .         │
                                          │ ELECTRONICALLY FILED        │
UNITED STATES DISTRICT COURT              │ DOC#:_____               │
SOUTHERN DISTRICT OF NEW YORK             │ DATE FILED: 7│ʌ7│ᛩ          │
-----------------------------------x      └─────────────────────────────┘
                                   :
In Re JOHNS-MANVILLE CORPORATION,  :
                                   :      82-B-11656 (CGM)
                      Debtor.      :
-----------------------------------
THE BOGDAN LAW FIRM, as counsel    :
for Salvador Parra, Jr.,           :
                                   :
                     Appellant,    :
                                   :      18-cv-1228 (JSR)
         -v-                       :
                                   :      OPINION AND ORDER
MARSH USA, INC.,                   :
                     Appellee,     :
                                   :
-----------------------------------x
```

JED S. RAKOFF, U.S.D.J.

This appeal arises out of the long-running bankruptcy of

the Johns-Manville Corporation ("Manville"), once the largest

supplier of raw asbestos in the United States. Salvador Parra,

Jr. (collectively with his estate, "Parra") brought suit in

Mississippi state court against Marsh USA, Inc. ("Marsh"),

Manville's principal insurance broker. Parra alleged that Marsh

knew of the dangers of asbestos but did not disclose them, and

conspired with Manville and others to prevent the public and the

government from learning the truth. Marsh moved to enjoin that

litigation, and the bankruptcy court held that claims like these

were enjoined and channeled into the bankruptcy as part of an

order issued in 1986. Parra appealed, and the district court

remanded for consideration of whether Parra was adequately

1

represented during the 1986 proceedings with regard to these types of claims, and, if he was not, whether he suffered any prejudice. The bankruptcy court held that he was adequately represented and, in any event, was not prejudiced because he could recover from the trust set up as part of the bankruptcy.

For the reasons that follow, the Court reverses and holds that Parra was not adequately represented in the 1986 proceedings and was thereby prejudiced. Parra is therefore not precluded from challenging the bankruptcy court's jurisdiction to enjoin Parra's state law case, and, on the merits, Parra succeeds in that challenge.

## I. Facts and Procedural History

### A. The 1986 Orders

Facing enormous liability for decades of asbestos-related injuries, Manville filed for Chapter 11 bankruptcy in 1982. In 1984, Manville reached a settlement in principal with various insurers (the "1984 Insurance Settlement Agreement"), requiring the insurers to contribute to a settlement fund that would compensate present and future claimants, contingent on the bankruptcy court channeling to that fund all related, future claims against the settling insurers. Record on Appeal ("ROA")

1887-1926, Bankr. Dkt. 4277-1 at 1-41.[1] The bankruptcy court

appointed a future claims representative ("FCR") to represent

the interests of those whose injuries were not yet manifest, ROA

913-916, Bankr. Dkt. 3919-20 at 1-4, and set about the herculean

task of ensuring that the settlement would maximize recovery for

the huge numbers of known and unknown victims. Over the next

year, the number of settling parties expanded to include, among

others, Marsh, which Manville had sued for failing to procure

sufficient insurance coverage.

In 1986, following several years of objections and

negotiations, the bankruptcy court confirmed the various

settlements between Manville and its insurers (the "1986

Orders"). ROA 223-397, Bankr. Dkt. 3916-2. As contemplated by

the 1984 Insurance Settlement Agreement, the 1986 Orders created

a single settlement fund (the "Manville Trust" or "Trust"),

funded in part with payments from the settling insurers, and

channeled all future claims against the settling insurers into

the Trust, effectively immunizing settling parties from future

liability. As relevant here, Marsh contributed $29.75 million to

the Manville Trust and received a release of claims "arising out

of or relating to services" performed by Marsh for Manville or

---

[1] "Dkt." citations in this opinion refer to docket entries in
this appeal, 18-cv-1228. "Bankr. Dkt." citations refer to docket
entries in the underlying bankruptcy case, 82-B-11656.

3

"in connection with insurance policies issued to" Manville, and
an injunction channeling any future such claims into the
Manville Trust. ROA 321-25.

Both the district court and the Second Circuit upheld the
1986 Orders against a challenge from a Manville distributor who
asserted that the bankruptcy court had no jurisdiction to enjoin
its derivative claims against Manville's other insurers. See
MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 90 (2d Cir.
1988). The process for making claims has been adjusted, see In
re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710 (E.D.N.Y.
1991), but the channeling injunction remains in place and the
Trust continues making payments to eligible claimants.

## B.    The Travelers Litigation

The ever-enterprising plaintiffs' bar, however, spent the
following two decades endeavoring to evade the 1986 Orders and
access the pockets of the surviving insurance companies.
Eventually, they hit upon bringing state suits against the
insurers themselves for allegedly independent torts, such as
failing to warn the public and conspiring to hide the danger of
the asbestos Manville sold. These suits proliferated, and
Manville's principal insurer, Travelers Indemnity Co.
("Travelers"), sought to enforce the channeling injunction
against them. Following a temporary injunction and mediation,
many of the parties reached a settlement in 2003 by which

4

Travelers would pay $445 million into a new settlement fund, separate from the Manville Trust. Travelers conditioned that settlement, however, on an order from the bankruptcy court clarifying that these claims were covered by the 1986 order. In 2004, over objection from the FCR, the bankruptcy court provided that clarification, noting that the injunction was intended to cover "100% of everything Manville-related." In re Johns-Manville Corp., No. 82-B-11656, 2004 WL 1876046 at *30 (Bankr. S.D.N.Y. Aug. 17, 2004); see also ROA 2293, Bankr. Dkt. No. 4277-12 (FCR objection).

That decision was appealed by some plaintiffs in the state law cases and by non-settling insurer Chubb Indemnity Insurance Co. ("Chubb"), which sought to preserve its right to bring state law contribution and indemnity claims against a Manville insurer. The district court affirmed, but the Second Circuit reversed, holding that the bankruptcy court did not have jurisdiction to enjoin non-derivative claims against third parties. In re Johns-Manville Corp., 517 F.3d 52, 62-65 (2d Cir. 2008). The Supreme Court, however, held that the 1986 Order had become final after direct appeal, so attacks on the bankruptcy court's jurisdiction to issue such a broad order were barred by claim preclusion. Travelers Indem. Co. v. Bailey, 557 U.S. 137, 152-54 (2009) ("Bailey"). The Supreme Court also held that the 1986 Orders unambiguously channeled into the Manville Trust even

5

non-derivative claims against insurers, as long as they were "based upon, arising out of or relating to" their coverage of Manville. Id. at 148-51.[2] The Court did note that parties who did not receive due process leading up to the 1986 Orders would not be precluded from challenging the bankruptcy court's jurisdiction, but it did not determine which parties had received due process or resolve the underlying jurisdictional question. Id. at 155.

On remand, the Second Circuit held that, while Chubb had preserved its due process claim, the objecting plaintiffs in the state law cases had not, as they had failed to raise the issue until after the Supreme Court's remand. In re Johns-Manville Corp., 600 F.3d 135, 147-48 (2d Cir. 2010) ("Chubb"). The Second Circuit then held that Chubb's claims were in personam, so the unique due process considerations for in rem claims did not apply. Id. at 154. The Court then looked to the due process principles applicable in class action settlements, as outlined in Amchem Prod., Inc. v. Windsor, 521 U.S. 591 (1997), and held that Chubb (1) had not been adequately represented in the 1986 proceedings because the FCR only represented those who were exposed to asbestos and the represented parties' interests

---

[2] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, footnotes, and citations are omitted.

6

conflicted with Chubb's, and (2) did not receive constitutional notice because it could not have predicted that the bankruptcy court would overstep its jurisdiction. Chubb, 600 F.3d at 156-58. Chubb was therefore free to attack the bankruptcy court's subject matter jurisdiction regarding the breadth of the 1986 Orders, and the Second Circuit affirmed its prior holding that the bankruptcy court could not enjoin non-derivative claims against non-debtors arising from independent conduct that did not affect the debtor's estate. Id. at 153. Therefore, the court concluded, Chubb was not bound by the 1986 Orders, and its claims were not channeled into the Trust. Id. at 158.

## C. **Parra's Claims**

Salvador J. Parra, Jr. developed asbestosis and other conditions after he was exposed to asbestos while working as an insulator in the 1960s and 1970s. In 2009, he hired The Bogdan Law Firm (the "Bogdan Firm") to bring suit against numerous Manville-related entities, including Marsh, in Mississippi state court. ROA 1200-52, Bankr. Dkt. 4088 at 4-56. Parra alleged that Marsh, among other things, conspired with asbestos producers, distributors, and insurers to withhold information from the public regarding the dangers of asbestos inhalation. ROA 1218-24. Like the claims in Chubb, Parra brought "in personam claims against Marsh for Marsh's independent misconduct." In re Johns-Manville Corp., 551 B.R. 104, 120 (S.D.N.Y. 2016) ("Bogdan I").

7

Salvador Parra passed away on June 30, 2010 and his wife, Peggy Parra, became the administrator of his estate. See Dkt. No. 15.

On August 6, 2010, Marsh filed a motion in the bankruptcy court to enforce the 1986 Orders against Parra and the Bogdan Firm. ROA 39-55, Bankr. Dkt. No. 3915. In July 2015, the bankruptcy court held that Parra's claims against Marsh were barred by the express terms of the 1986 Orders and Parra's due process rights were not violated, so Parra had to bring his claims against the Trust. See In re Johns-Manville Corp., 534 B.R. 553, 563-568 (Bankr. S.D.N.Y. 2015).

On appeal, Judge Scheindlin affirmed that Parra's claims were "related to" Marsh's insurance relationship with Manville, as that phrase was broadly interpreted by the Supreme Court in Travelers, and thus barred by the 1986 Orders. Bogdan I, 551 B.R. at 117-18, 123. However, the Court remanded in part, ordering the bankruptcy court to further develop the factual record to determine "the extent to which the FCR was charged with representing Parra (and other future asbestos claimants) with respect to in personam claims against Marsh and, if the FCR was so charged, determine whether the quality of that representation was sufficient to satisfy due process." Id. at 123-24. This factual finding, she held, should be guided by the due process analysis the Second Circuit applied in Chubb. Id. at 124. Second, the bankruptcy court was to determine "whether a

8

denial of due process would have resulted in prejudice," because Parra perhaps could have collected from the Manville Trust and had not explained why he did not. Id.

On remand, the bankruptcy court held that Parra received due process as to his non-derivative claims against Marsh because, as a matter of fact, he was adequately represented by the FCR as to those claims, and, in any case, he was not prejudiced by any alleged due process defect. In re Johns-Manville Corp., 581 B.R. 38, 54, 58-59 (Bankr. S.D.N.Y. 2018) ("Bogdan II"). The bankruptcy court therefore issued another order (the "January 2018 Order") enjoining Parra's Mississippi claim and stating that Parra's only source of recovery is the Manville Trust. ROA 2447-48, Bankr. Dkt. 4312. That order is now on appeal to this Court.

## II. Standing

Marsh argues now, for the first time, that the Bogdan Firm does not have standing to pursue this appeal.[3] Back in 2010, the response to Marsh's motion to enforce the stay was filed on behalf of "The Bogdan Law Firm as Counsel for Salvador Parra, Jr.," and the Bogdan Firm retained its own, separate counsel.

---

[3] This Court, of course, has an independent obligation to examine plaintiff's standing even if the defendant has not raised the issue at any prior point in this lengthy litigation. Thompson v. Cty. of Franklin, 15 F.3d 245, 248 (2d Cir. 1994).

ROA 523, Bankr. Dkt. No. 3919 at 1. The same party was listed on the notices of appeal in 2015, see Notice of Appeal, Bogdan II, 15-cv-6607 (S.D.N.Y. 2015) Dkt. No. 1, and to this Court, Dkt. No. 1. According to Marsh, the Parra estate thus failed to appeal the bankruptcy court order within the time period required by the bankruptcy rules and cannot now be joined or substituted. See Fed. R. Bankr. P. 8002(a); Torres v. Oakland Scavenger Co., 487 U.S. 312, 315 (1988). Parra would thus be bound by the bankruptcy court's order enjoining its state court litigation, and the Bogdan Firm cannot pursue the Mississippi claim without its client, even if it were to succeed on this appeal. The Bogdan Firm therefore lacks standing.

While formalistically appealing, Marsh's argument ignores the reality that, throughout this suit, every single relevant actor - the Parra estate, the district court in the initial appeal, the bankruptcy court, and Marsh itself - understood that Parra was the party doing the litigating, regardless of how the caption read. A representative of the Parra estate submitted an affidavit to this Court, stating, "At all times I have believed that the Bogdan law Firm was representing the interests of my late husband's estate in each phase of this litigation whether in the Mississippi State Court, the U.S. Bankruptcy Court or in this Court." Dkt. No. 18 ¶ 2. The Bogdan Firm never asserted any independent claim or made any argument on its own behalf. Marsh

10

likewise addressed only Parra's rights at every point in this litigation, until now. See, e.g., ROA 1862-1880, Bankr. Dkt. No. 4276.

Further still, both the bankruptcy court and the prior district court followed the parties' lead and never mentioned the Bogdan Firm's independent interests. For example, the district court remanded for the bankruptcy court to "determine the extent to which the FCR was charged with representing Parra (and other future asbestos claimants) with respect to in personam claims against Marsh and, if the FCR was so charged, determine whether the quality of the representation was sufficient to satisfy due process." Bogdan I, 551 B.R. at 123-24. And in the January 2018 order, the bankruptcy court did not mention the Bogdan Firm, instead stating the following: "Parra is enjoined and channeled by this Court's Confirmation Order and Injunction," and "Parra's only source of recovery is the Manville Trust." ROA 2448, Bankr. Dkt. No. 4312 at 2.

This Court will not brush aside the consistent understanding of every relevant party for the past eight years simply because of a captioning error. The Federal Rules of Appellate Procedure require that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4). The

11

test is not whether a party is explicitly named in the notice, but "whether it is objectively clear that a party intended to appeal." Fed. R. App. P. (3)(c)(4), commentary to the 1993 amendment; see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 554 (2d Cir. 2000). Although this rule is not technically binding here, the Court sees no reason the same principle it incorporates should not apply to an appeal from the bankruptcy court to the district court. Marsh has for eight years understood "the Bogdan Firm, as Counsel for Salvador Parra, Jr." to effectively mean the Parra estate itself, so it certainly was on notice that Parra intended to appeal the bankruptcy court's decision.

Moreover, in the order appealed to this Court, the bankruptcy court nowhere mentioned the Bogdan Firm, enjoining only Parra. In Guckenberger v. Prudential Ins. Co. of Am., 472 F. App'x 69, 70 (2d Cir. 2012), the Second Circuit held that a notice of appeal of contempt sanctions that listed only the client nonetheless made "clear that counsel intended to be a party to the appeal because counsel alone was the subject of the court's sanction and [the client] would have had no direct personal stake in the outcome of an appeal from the portion of the district court's order sanctioning counsel." Multiple other circuits agree. See Agee v. Paramount Commc'ns, Inc., 114 F.3d

12

395, 399 (2d Cir. 1997) (citing cases). The Court finds these cases persuasive and applicable here.

Given the history of this case and the subject of the underlying order, the notice of appeal was sufficient to put the defendants on notice that Parra intended to appeal. Parra unquestionably has standing to do so, both under Article III and the stricter "person aggrieved" standard applicable in appeals from a bankruptcy court. See In re DBSD N. Am., Inc., 634 F.3d 79, 89 (2d Cir. 2011).

## III. Due Process

On remand, the bankruptcy court found that "the Future Claims Representative was fully aware of the terms of the injunction against settling insurers and the types of claims that might be enjoined," including non-derivative claims. Bogdan II, 581 B.R. at 55. "Future [asbestos claimants'] rights, including whatever in personam rights they may have had, were addressed and considered by the Future Claims Representative who considered the proposed order to enjoin actions against the settling insurers." Id. The bankruptcy court's factual findings are subject to review for clear error.

The order appointing the FCR after the 1984 Insurance Settlement Agreement stated that the FCR represented "those persons who have been exposed to asbestos or asbestos products mined, manufactured, or supplied by Manville pre-petition and

13

have manifested or will manifest disease post-petition, and who are not otherwise represented in these proceedings." ROA 913, Bankr. Dkt. No. 3919-20 at 1; Chubb, 600 F.3d at 140. Parra personally falls within this category, and does not contend that he did not receive due process as to his in rem claims. But the order is vague as to whether the FCR was authorized to represent future claimants as to any other claims.

Other evidence, however, is unambiguous. Following the notice of the settlement, several parties objected to its broad language, arguing that the injunction, as worded, went beyond the bankruptcy court's jurisdiction by enjoining claims against third parties for their independently tortious conduct. See ROA 1969-70, Bankr. Dkt. No. 4277-4 at 22-23 (Objection of the Committee of Co-Defendants); ROA 2027, Bankr. Dkt. No. 4277-5 at 30 (Brief of the Committee of Asbestos Related Litigants and/or Creditors); see also Chubb, 600 F.3d at 140 (discussing these and similar objections).

In May 1985, the FCR submitted a brief regarding the proposed settlement in which he recognized that "[a]ll parties seem to agree that any injunction . . . is limited to this Court's jurisdiction over the res," and so requested that the bankruptcy court "find that it has in rem jurisdiction over the Policies and that the injunction and channeling order requested is in rem." ROA 2062, Bankr. Dkt. No. 4277-7 at 5. At the May

14

20, 1985 fairness hearing on the injunction, the FCR's lawyer made a similar point:

> I always thought there was an agreement on the law, but a question about what the words meant. I think I am stating a clear proposition that this Court has jurisdiction over the res policies, can enter Orders to enforce that jurisdiction, that the proposal channeling Orders, channels claims that were against the res of the funds created by the settlement and the proposed injunction only serves to enjoin claims against the res.

ROA 2078, Bankr. Dkt. No. 4277-8 at 12:12-22. He also told the bankruptcy judge that the parties could put together a written memorandum of that joint understanding. Id. at 2079, 12:25-13:3. The parties then executed a letter agreement on June 3, 1985, which was to be an amendment to the 1984 Insurance Settlement Agreement. One portion stated:

> The Court has in rem jurisdiction over the Policies and thus the power to enter appropriate orders to protect that jurisdiction. The channeling order is intended only to channel claims against the res to the Settlement Fund and the injunction is intended only to restrain claims against the res (i.e., the Policies) which are or may be asserted against the Settling Insurers.

Chubb, 600 F.3d at 141 (emphases in original). That letter was followed by an order on September 26, 1985, in which the bankruptcy court preliminarily "approved pursuant to Rule 9019 of the Rules of Bankruptcy Procedure the 1984 Insurance

15

Settlement Agreement together with the June 3, 1985 letter
agreement." Id.

Other briefs support the finding that all parties shared
this understanding. In their briefs supporting the settlement,
Manville and Travelers noted, respectively, that it was not
intended to release "Settling Insurers from claims by third
parties based on the Insurer's own tortious misconduct towards
the third party," but "only to restrain claims against the res
(i.e., the Policies) which are or may be asserted, against the
Settling Insurers." Bailey, 557 U.S. at 161 (Stevens, J.
dissenting).

Marsh argues that these briefs demonstrate that the issue
of whether the 1986 Orders would bind future claimants in this
manner was fully litigated. The FCR argued, on behalf of future
claimants like Parra, that the bankruptcy court should not
enjoin non-derivative claims against third parties because it
did not have jurisdiction to do so. And although this argument
was ultimately unsuccessful, the fact that the FCR raised it is
proof that the FCR represented Parra's interests on this score.

However, the FCR was not advocating on behalf of future
claimants on this issue. He was stating the then general
understanding that the bankruptcy court did not have
jurisdiction over future, non-derivative claims against third
parties. The FCR made no arguments in the alternative and

16

appears to have never seriously contemplated the possibility that the bankruptcy court could so bind future claimants. Marsh points to no events, documents, or arguments post-dating these briefs suggesting the FCR's understanding of the bankruptcy court's jurisdiction evolved. If the bankruptcy court did not have the power to bind future claimants in this way – as all agreed it did not – then it would be nonsensical for those claims to be the subject of settlement negotiations or the FCR's representation generally.

Admittedly, as Marsh and the bankruptcy court note, this case is distinguishable from Chubb in several important respects. Parra, unlike Chubb, is within the scope of the claimants to be expressly represented by the FCR. There is no apparent conflict between the represented parties and Parra. And the general category of claims at issue here were at least contemplated by the parties during the run-up to the 1986 Order. Nonetheless, the kinds of claims that the Parra estate brought in Mississippi were equally outside the scope of the FCR's perceived representative duties because they were equally outside the bankruptcy court's jurisdiction. Because he did not

17

represent Parra as to these claims at all, he could not have done so adequately.[4]

The bankruptcy court did not discuss the evidence above. Instead, it relied largely on the fact that the Supreme Court in Bailey held that the plain language of the order enjoined these claims. But that is not the point. In fact, the Supreme Court explicitly ignored the external evidence admittedly indicating that "some parties to the Manville bankruptcy . . . understood the proposed injunction to bar only claims derivative of Manville's liability." Id. at 150. In resolving the due process question, this Court must look to the evidence that the Supreme Court could ignore.

The bankruptcy court also relied on a 1983 order enjoining "any direct action suits against Manville's insurers and sureties." In re Johns-Manville Corp., 33 B.R. 254, 256 (Bankr.

_____

[4] Given this conclusion, the Court need not address the sufficiency of the notice provided to Parra. Cf. In re Johns-Manville Corp., 68 B.R. 618, 626 (Bankr. S.D.N.Y. 1986), aff'd sub nom. Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988) (describing the "extensive campaign designed to provide the maximum amount of publicity, with respect to the confirmation process of this Plan, that was reasonable to expect of man and media"); Chubb, 600 F.3d at 157 ("In order to comprehend that the contemplated channeling injunction would bar Chubb's in personam, non-derivative claims against Travelers, the recipient of this Notice would have to predict that the bankruptcy court would exceed its in rem jurisdiction in entering the 1986 Orders."). Constitutionally sufficient notice does not cure inadequate representation.

18

S.D.N.Y. 1983). That order, the bankruptcy court found, indicated that, "[a]s early as 1983, this Court found that any direct action suit against an insurer of Manville would negatively impact Manville's bankruptcy estate by limiting the assets available for Manville to put in trust for future asbestos claimants." Bogdan II, 581 B.R. at 43. The enjoined "direct actions," however, were not claims against third parties for independent misconduct, but lawsuits brought in "certain states [where] third party claimants are permitted to institute direct actions against insurance carriers which result in an adjudication of both the third party claimant's claim against the insured and the insured's claim against the insurer." In re Johns-Manville Corp., 26 B.R. 420, 435 (Bankr. S.D.N.Y. 1983).[5] Likewise, though the FCR objected to a proposed settlement order by questioning "[w]hether the settlement amounts contributed by the Settling Carriers are reasonable . . . when weighed against the recovery which Debtors could obtain if successful in the litigation against one or more of those Carriers," ROA 1944, Bankr. Dkt. No. 4277-3 at 2, this objection likely refers to derivative suits against insurance carriers.

---

[5] As the Supreme Court pointed out, the term "direct actions" has been used in these lawsuits since 2004 to refer to non-derivative suits against insurers, though that is not the usual meaning of the term. Bailey, 557 U.S. at 143 n.2.

19

The record thus demonstrates that neither the FCR nor any other party to the 1986 proceedings believed the bankruptcy court had jurisdiction to enjoin independent claims against third-parties. The FCR would thus have no reason to believe such claims were within the scope of his representation, and so could not have provided adequate representation on that score.

## IV. Prejudice

The district court also remanded to the bankruptcy court for consideration of whether "denial of due process would have resulted in prejudice" to Parra, noting that "the 1986 Orders resulted in creating the Manville Trust," from which Parra "had the opportunity to seek damages for his asbestos-related injuries." Bogdan I, 551 B.R. at 124. The bankruptcy court held that the "answer clearly is **no**," because "there is no dispute that Parra could submit a claim to the Manville Trust." Bogdan II, 581 B.R. at 58-59 (emphases in original).

Although the Second Circuit has not held that prejudice is a necessary element of a due process claim, many other circuits have. See Bogdan I, 551 B.R. at 124. In assuming without deciding that prejudice was a necessary element, the Second Circuit described the standard thus:

> [T]he relevant inquiry is whether courts can be confident in the reliability of prior proceedings when there has been a procedural defect. In considering reliability, the entire record must be considered and the probable

20

> effect of the error determined in the light of
> all the evidence. If the court cannot say,
> with fair assurance, after pondering all that
> happened without stripping the erroneous
> action from the whole, that the judgment was
> not substantially swayed by the error, then it
> must find a procedural due process violation.

In Matter of Motors Liquidation Co., 829 F.3d 135, 162-63 (2d
Cir. 2016).

It is difficult to evaluate in hindsight whether the
outcome would have been any different had the FCR adequately
represented future claimants as to these claims. "Opportunities
to negotiate are difficult if not impossible to recreate." Id.
at 164. Marsh, however, contends that this is the rare
exception, because the FCR and several objectors in fact argued
that the bankruptcy court did not have jurisdiction to enjoin
claims against third parties that did not relate to the
bankruptcy res, ROA 1969-70, 2027, just as an adequate
representative would have done. These objections, however, led
to the FCR's own brief and argument, clarifying that he too did
not believe that the bankruptcy judge had jurisdiction to bind
future claimants as to non-derivative claims against third
parties, which led to the June 3, 1985 letter agreement
addressing those concerns. See Chubb, 600 F.3d at 141. The
overwhelming evidence indicates that no one believed that the
bankruptcy court could bind future claimants as to their non-
derivative claims against third parties.

Had the FCR understood that these claims were within his mandate, he may have lobbied harder for the explicit exclusion of such claims from the channeling injunction or compelled Marsh (or other settling parties) to contribute more to the Trust, which would mean that more would remain for this plaintiff to recover. That uncertainty alone is sufficient to find prejudice. Moreover, the objections predating the 1984 letter discussed above suggest that at least those groups thought the claims had value, and Travelers recently settled similar claims for a significant amount of money. The Court therefore cannot say with fair assurance that the outcome would not have been materially different had Parra received adequate representation.

The Court therefore finds that the FCR did not adequately represent Parra as to his non-derivative claims against third parties, and that this inadequate representation was not harmless. The bankruptcy court clearly erred in finding otherwise. Because Parra did not receive due process, he is not estopped from challenging the bankruptcy court's jurisdiction to channel these claims to the Manville Trust, and that challenge succeeds. See Chubb, 600 F.3d at 158. Parra is free to proceed with the Mississippi action.[6]

---

[6] The Court need not address Parra's argument that the bankruptcy court erred in refusing to permit additional briefing on certain issues.

22

Accordingly, the January 2018 Order is reversed, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion. The Clerk of Court is directed to close this appeal.

SO ORDERED

Dated:     New York, NY
           July 25, 2018                    JED S. RAKOFF, U.S.D.J.